**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **KIMBERLY GLANVILLE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-3029** |
| **v.** | * | |
| | * | |
| **BALTIMORE POLICE DEPARTMENT, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Kimberly Glanville ("Plaintiff") filed this action against defendants Baltimore Police Department ("BPD") and the Mayor and City Counsel of Baltimore (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, and the Maryland Fair Employment Practices Act ("MFEPA"). ECF No. 1. This matter is before the Court on Defendants' Motion to Dismiss. ECF No. 13. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons stated below, the Court will grant in part and deny in part Defendants' motion. Plaintiff's claims for retaliation under Title VII and the MFEPA in Counts V and VII of her Complaint will proceed. All other counts in the Complaint will be dismissed for failure to state a claim.

## I. BACKGROUND

Plaintiff is an African American female who served as a BPD officer for 28 years, reaching the rank of Sergeant, until her termination in September 2024. *See* ECF No. 1 (Compl.), ¶¶ 25, 31. Approximately nine months earlier, on December 14, 2023, Plaintiff filed a prior civil action against BPD, asserting claims for discrimination and hostile work environment under Title VII, 42 U.S.C. § 1983, and MFEPA, and seeking damages, equitable relief, and attorney's fees and costs. *See Kimberly Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Department*, Civ. No. EA-23-3395. ("*Glanville I*").[1] The civil complaint in *Glanville I* was based upon two charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC")—Charge No. 531-2022-01076, as amended, and Charge No. 531-2023-01635—which alleged, among other things, that Plaintiff was repeatedly passed over for promotion opportunities. *See Glanville I*, ECF Nos. 1 & 17. The facts of the case are summarized in Judge Aslan's Memorandum Opinion dated December 31, 2025. *Glanville I*, ECF No. 17 at 2–6, 2024 WL 5264381, at *1–3 (D. Md. Dec. 31, 2024).

While a motion to dismiss in *Glanville I* was pending, BPD convened an administrative hearing on July 18, 2024, to consider administrative charges filed against Plaintiff based on allegations that she frivolously filed eight complaints of misconduct against Lt. Monique Lucien as an act of retaliation. Compl. ¶ 96. The administrative board found Plaintiff guilty on one of the eight counts and recommended that Police Commissioner Richard J. Worley impose the punishment of a letter of reprimand, one day loss of leave, and psychological services. *Id.* ¶¶ 99–100, 104. Commissioner Worley reviewed the administrative hearing record and increased the

[1] In this Memorandum Opinion, citations to the docket in *Glanville I* will include specific reference to *Glanville I*. All other citations to docket entries refer to the record in the instant case.

punishment to termination on September 10, 2024. *Id.* ¶¶ 101–02. On September 27, 2024, Plaintiff appealed that decision to the Circuit Court of Maryland for Baltimore City. *Id.* ¶ 103.

On December 31, 2024, Judge Aslan of this Court dismissed the civil complaint in *Glanville I* without prejudice. *See Glanville I*, ECF Nos. 17 & 18. In doing so, the Court identified deficiencies in the complaint and granted Plaintiff leave to amend within thirty days. *Id.*[2] The Court warned that "[i]f Plaintiff does not timely file an Amended Complaint, the dismissal will be with prejudice and the case will be closed without further notice from the Court." *Id.*, ECF No. 18. Plaintiff did not file an amended complaint within the allotted thirty days. Accordingly, on January 31, 2025, the Court dismissed the case with prejudice and directed the Clerk to close the matter. *Id.*, ECF No. 19.

On the same day, after receiving notice of the dismissal, Plaintiff moved for leave to file an untimely amended complaint, explaining that counsel had miscalculated the filing deadline. *Id.*, ECF No. 20. Plaintiff attached a proposed amended complaint, *id.*, ECF No. 20-1, representing that she had "diligently worked to amend" the pleading and "fully intended to file" it on time, *id.* ECF No. 20 at 3. Plaintiff's proposed amended complaint included allegations about her termination. *See id.*, ECF No. 20-1.

On May 9, 2025, the Court denied Plaintiff's motion, construing it as a motion under Federal Rule of Civil Procedure 59(e), accompanied by a motion for leave to amend under Rule 15(a). *Id.*, ECF No. 26, 2025 WL 1359218 (D. Md. May 9, 2025). In doing so, the Court considered

---

[2] Specifically, the Court held that Plaintiff did not plead a color discrimination claim, failed to allege a sufficient comparator in support of her race discrimination claim, failed to allege a materially adverse action to support her retaliation claim, failed to plead that the unwelcome conduct she experienced was due to her protected status, and failed to state claims under § 1983 and the MFEPA for the same reasons her Title VII claims failed. *See Glanville I*, ECF No. 17 at 17, 18, 22, 24, 25, 27.

the proposed amendments and concluded that they "are futile because, taken together, they still fail to state a claim for relief." *Id.* at 7.

Rather than file a notice of appeal in *Glanville I*, Plaintiff filed a third charge of discrimination with the EEOC on May 19, 2025—Charge No. 531-2025-02973. In that charge, Plaintiff identified the matter as a continuing action and alleged that the most recent discriminatory act was her termination on September 10, 2024. Compl. ¶ 18.

On May 20, 2025, the Circuit Court for Baltimore City ordered BPD to reinstate Plaintiff's employment. *Id.* ¶ 104. BPD appealed the decision, *see In the Matter of Kimberly Glanville*, Appellate Court of Maryland, Case No. ACM-REG-0884-2025 (filed June 27, 2025), and has not reinstated Plaintiff, Compl. ¶ 105.

Plaintiff initiated the instant action on September 12, 2025. The Complaint is based on the same underlying allegations of discrimination asserted in *Glanville I*, along with allegations relating to Charge No. 531-2025-02973.[3] *See generally* Compl. Specifically, the Complaint here includes the same six causes of action previously asserted in *Glanville I*: Title VII claims for race discrimination, color discrimination, hostile work environment, and retaliation, and claims under 42 U.S.C. § 1983 and the MFEPA. *Id.* ¶¶ 108–234. The Complaint here largely mirrors the complaint dismissed in *Glanville I* and is nearly identical to the proposed amended complaint that Judge Aslan previously reviewed and rejected as futile. *See Glanville I*, ECF Nos. 20-1 & 26. The only significant differences are the addition of a new cause of action for sex discrimination under Title VII in the instant case, Compl. ¶¶ 153–161, and allegations regarding BPD's refusal to reinstate Plaintiff after the circuit court's order, *id.* ¶¶ 103–05, 110, 133, 155, 168, 174, 183, 205, 232.

[3] On June 17, 2025, the EEOC's Baltimore Filed Office dismissed Plaintiff's charge and issued her a Notice of Right to Sue. *Id.* ¶ 20.

Pending before the Court now is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. Plaintiff opposed the motion, ECF No. 19, and Defendants filed a reply, ECF No. 20.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of [her]

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Generally, when a Rule 12(b)(6) motion is filed, the court's review is limited to the allegations in the complaint and documents that are incorporated into the complaint by reference and those properly attached to the complaint as exhibits. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment." *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at *23 (D. Md. Sept. 15, 2023) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). A court may "consider a document submitted by the movant

that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166).

Additionally, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[I]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 416 (D. Md. 2024) (quoting *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)); *see also Smith-Henry v. Kendall*, Civ. No. GLS-23-2154, 2024 WL 4264905, at *6 (D. Md. Sept. 23, 2024) (citing *Yampierre*, 2023 WL 6049489, at *24; *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)).

## III. DISCUSSION

### A. Res Judicata

This Court finds that Plaintiff's claims regarding BPD's conduct leading up to, and including, her termination are barred by res judicata.

Under the doctrine of res judicata, also known as claim preclusion, a final judgment on the merits in an earlier decision precludes the parties from relitigating issues that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). The doctrine was designed to protect "litigants from the burden of relitigating an identical issue

with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161–62 (4th Cir. 2008) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004) (noting that res judicata is a doctrine that promotes judicial efficiency and the finality of decisions). For res judicata to preclude a party from raising a claim, three elements must be present: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)). A Rule 12(b)(6) dismissal with prejudice operates as an adjudication on the merits for purposes of res judicata. *See, e.g.*, *Hall v. Verizon Commc'ns, Inc.*, Civ. No. GJH-20-1960, 2021 WL 3188003, at *4 (D. Md. July 28, 2021), *aff'd*, No. 21-1844, 2021 WL 5985545 (4th Cir. Dec. 17, 2021); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981).

Importantly, "[t]he preclusive [e]ffect of a prior judgment extends beyond claims or defenses actually presented in previous litigation[.]" *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). "Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989) (citation omitted). So, an earlier and later suit may be deemed to involve the same cause of action where the plaintiff was aware of a claim she had when litigating the prior suit and could have asserted it, even if she failed to assert it in the prior suit. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005) (finding that "an identity of the cause of

action" in both the earlier fiduciary liability suit and the later employer liability suit was established where plaintiff "actually knew of its employer liability claim when it was litigating the fiduciary liability suit" and "could have brought" that claim in the prior suit).

The Fourth Circuit "has adopted a transactional approach to the identity of claims question drawn from § 24(b) of the Restatement (Second) of Judgments." *Meekins*, 946 F.2d at 1058. This standard calls for a determination of "whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Id.* (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)); *see also Thomas v. Mercedes Benz Credit Corp.*, Civ. No. AW-04-976, 2006 WL 8457058, at *4 (D. Md. May 23, 2006) ("Res judicata precludes further claims by the same parties arising out of the same transaction or series of transactions."). In general, the expression "same transaction or series of transactions" means "a natural grouping or common nucleus of operative facts." Restatement (Second) of Judgments § 24 (1982). Relevant factors include relatedness in time, space, origin, and otherwise overlapping features, such as witnesses and proof. *Id.*

Six of the seven counts asserted in this action were previously asserted in *Glanville I* against the same defendants named here and were ultimately dismissed with prejudice. The only material difference between the six counts asserted in *Glanville I*'s proposed amended complaint and the corresponding counts here is that Plaintiff now adds the allegation that BPD's failure to reinstate her was discriminatory and retaliatory. Setting the failure-to-reinstate claims aside,[4] all three elements of res judicata are satisfied with respect to Counts I, II, IV, V, VI, and VII of the Complaint. Plaintiff may not relitigate these claims anew in the instant action.

---

[4] The Court will address Plaintiff's failure-to-reinstate claims in Part III.B *infra*.

Plaintiff's newly added sex discrimination count, Count III, is likewise precluded because it arises from the same "transaction or series of transactions" at issue in *Glanville I*, and it was known to Plaintiff and available to prosecute in *Glanville I*. *Meekins*, 946 F.2d at 1058. In *Glanville I*, Plaintiff alleged that BPD discriminated against her based on protected characteristics and activities between 2018 and 2023, including by passing over Plaintiff for promotions, suspending and reassigning her, and making disparaging remarks. *Glanville I*, ECF No. 17 at 2. Although Plaintiff did not allege sex discrimination in *Glanville I*, her present allegations of sex discrimination are based on the same conduct by BPD during the same period at issue in *Glanville I*. More specifically, Plaintiff alleges that BPD discriminated against her on the basis of sex by, among other things, passing over her for promotions, suspending and reassigning her, and making disparaging remarks. *See* Compl. ¶ 155. Notably, in the administrative charges that defined the scope of the complaint in *Glanville I*, Plaintiff averred that the discriminatory treatment she experienced was because of "the color of her skin *and gender*," *Glanville I*, ECF No. 12-2 (Charge No. 531-2022-01076), at 3 (emphasis added), and because of Plaintiff's "race, color, *and sex*," *id.*, ECF No. 12-4 (Charge No. 531-2023-01635) (emphasis added). It is clear, therefore, that Plaintiff was aware she had a sex discrimination claim to pursue when she litigated the claims asserted in *Glanville I*. In short, Plaintiff's sex discrimination claim was available to her in *Glanville I*—and she does not meaningfully argue otherwise. As Plaintiff had the opportunity to litigate her sex discrimination in her prior suit, res judicata bars assertion of the claim in the instant suit.

Res judicata also bars Plaintiff's claims related to her termination. Plaintiff contends that the "core" of this action concerns EEOC Charge No. 531-2025-02973 and her allegedly unlawful termination, which were not part of her dismissed complaint in *Glanville I* and thus ripe for consideration here. *See* ECF No. 19-1 at 9. The problem for Plaintiff, however, is that those

allegations were presented to the Court in *Glanville I* through Plaintiff's proposed amended complaint and ultimately found to be futile.

It has been widely held that "denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397–98 (4th Cir. 2006) (citing *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003)); *see also Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012) (citation omitted) ("When a party chooses to move for leave to amend its complaint and then not to appeal denial of that motion, the party 'is not entitled to a second opportunity [in a later action] to litigate [the] claim' that the party sought to add."); *Pro. Mgmt. Assocs.*, 345 F.3d at 1032 (citation omitted) ("The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action.")); *N. Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000) ("Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate."); *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 399–400 (2d Cir. 1997) ("Where a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, res judicata applies to the claims sought to be added in the proposed amended complaint."); *Qualicare-Walsh, Inc. v. Ward*, 947 F.2d 823, 826 (6th Cir. 1991) (res judicata barred re-litigation after denial of request to amend and plaintiffs declined to appeal); *Gonsalves v. Bingel*, 5 A.3d 768, 783 (Md. App. Ct. 2010) (res judicata applies to denials of leave to amend "regardless of whether [] the trial court's denial of leave to amend was erroneous [or] the trial court's decision was based on procedural grounds instead of the merits").

Plaintiff's proposed amended complaint in *Glanville I* contained, in each count, allegations concerning her termination and surrounding events. *See, e.g.*, *Glanville I*, ECF No. 20-1, ¶ 92

("Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including her November 2024 termination from the Baltimore Police Department in violation of Title VII."), ¶ 128 ("Further, Defendant's [color treatment] and actions are ongoing, and resulted in the termination of Plaintiff's employment with the Baltimore Police Department in November 2024."), ¶ 134 ("The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment based upon Plaintiff's race, color, sex, and retaliation for protected activity, and detrimentally affecting Plaintiff and leading to her termination in November 2024."). Judge Aslan considered those allegations and concluded that the proposed amended complaint was futile because it failed to state a viable claim for relief. *See id.*, ECF No. 26 at 10 ("In her proposed amended complaint Ms. Glanville added small details such as additional adverse actions (her termination in November 2024), but the proposed amendments do not correct the fundamental flaw in her pleading.").

Contrary to Plaintiff's assertion, Judge Aslan's determination of futility was not dicta. *See id.*, ECF No. 19-1 at 6–7. The Court explained that, when a motion under Rule 59(e) is accompanied by a motion to amend a complaint under Rule 15(a), the standards under the rules are collapsed, allowing "the court simply to turn to the standard applicable to the motion to amend." *Glanville I*, ECF No. 26 at 7 (citing *Daulatzai v. Maryland*, 97 F.4th 166, 178–79 (4th Cir. 2024)). The Court went on to conclude that "the proposed amendments to the Complaint are futile because, taken together, they still fail to state a claim for relief." *Id.* If Plaintiff disagreed with Judge Aslan's analysis, her remedy was to appeal that ruling in *Glanville I*—not to initiate a second lawsuit asserting substantively identical allegations.

Plaintiff's invocation of the "continuing violation" theory does not alter the analysis. According to Plaintiff, any claims in the instant Complaint that are precluded are merely pled "as

past history and components of a continuing pattern leading to, and culminating in, Commissioner Worley's later termination decision and BPD's post-order refusal to reinstate [Plaintiff], rather than as freestanding, timely claims." ECF No. 19-1 at 15.

But Plaintiff's allegation that her termination was part of a continuing pattern is not new. As noted *supra*, in the proposed amended complaint she presented in *Glanville I*, Plaintiff expressly alleged that her termination was part of a pattern of alleged discrimination and retaliation. The Court considered those allegations and concluded that the proposed amended complaint was futile because it failed to state a claim for relief. *Glanville I*, ECF No. 26 at 10. That finding of futility and the resultant denial of leave to amend in *Glanville I* precludes Plaintiff from re-asserting any termination-based discrimination or retaliation claims in a new suit—whether based on a continuing violation or a discrete act.

In sum, Plaintiff's claims regarding BPD's allegedly discriminatory and retaliatory conduct leading up to, and including, her termination are barred by res judicata.

**B. Failure or Refusal to Reinstate**

The only claims in the instant Complaint that were not actually brought or available to be brought in *Glanville I* concern Plaintiff's allegation that BPD's failure or refusal to reinstate her violated Title VII, the MFEPA, and § 1983. The Court finds that Plaintiff fails to state any plausible discrimination or hostile work environment claim under Title VII or the MFEPA. She does, however, state a plausible retaliation claim under both statutes. Finally, Plaintiff fails to state a claim under § 1983.

**1. Discrimination**

In Counts I, II, and III of the instant Complaint, Plaintiff asserts claims of discrimination based on race, color, and sex, respectively, under Title VII. In Count VII, Plaintiff alleges corresponding violations of the MFEPA based on race, color, and sex discrimination.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color, . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a). Similarly, the MFEPA prohibits employment discrimination based on a person's "race, color, . . . [or] sex . . . ." Md. Code Ann., State Gov't § 20-606(a)(1)(i). The MFEPA is the state law analogue to the federal employment discrimination statutes. *See Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). Accordingly, courts in this District analyze MFEPA under the same standard applied to Title VII claims. *See Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civ. No. RDB-23-2306, 2025 WL 19987, at *6 (D. Md. Jan. 2, 2025) (collecting citations).

The plaintiff asserting an employment discrimination claim must allege facts to support a reasonable inference that the employer took an adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

Unlawful discrimination in the workplace may take the form of disparate treatment. "Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (quoting *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994)). To establish a *prima facie* case of disparate treatment in employment, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4)

different treatment from similarly situated employees outside the protected class." *Id.* (citing *Coleman*, 626 F.3d at 190).

A plaintiff is not strictly required to allege facts sufficient to establish all elements of a *prima facie* case of employment discrimination to avoid dismissal under Rule (12)(b)(6), *Parker v. Child.'s Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *9 (D. Md. Dec. 9, 2021), and is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim[,]" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). But she must, however, "allege[ ] facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, … '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). Thus, to survive a motion to dismiss, a plaintiff must "establish a plausible basis for believing [comparators] were actually similarly situated." *Coleman*, 626 F.3d at 191. The "[c]omparators need not be identical, [but] they must be similar in all relevant aspects, including conduct, performance, and qualifications." *Walker v. Maryland Dep't of Info. & Tech.*, Civ. No. CCB-20-219, 2020 WL 6393435, at *4 (D. Md. Nov. 2, 2020).

Plaintiff fails to identify sufficient facts in her Complaint to support a reasonable inference that any decision BPD not to reinstate her after the circuit court's order was based on her race, color, or sex. Plaintiff does not allege, for example, that a similarly situated employee outside any of her protected classes was reinstated under similar circumstances while Plaintiff was not. She

does not identify any non-Black or non-female officer, or any officer otherwise outside of her protected class, who was subject to the same disciplinary process, obtained a comparable court ruling, and was ultimately reinstated or otherwise received more favorable treatment from BPD. Instead, Plaintiff relies largely on conclusory and general allegations that similarly situated colleagues outside her protected class "experienced different and more preferable treatment as compared to Plaintiff[.]" *See, e.g.*, Compl. ¶¶ 110, 133, 155, 175, 232. But Plaintiff's conclusory allegations do not provide sufficient factual detail regarding any alleged comparator's position or disciplinary history, or the circumstances surrounding any decision BPD made to reinstate them, to permit a meaningful comparison to BPD's failure or refusal to reinstate Plaintiff or any inference of discrimination.

Plaintiff's reliance on incidents alleged in *Glanville I* does not make up for her pleading deficiency. In her opposition brief, Plaintiff points out allegations pressed in *Glanville I* and reasserted in the instant Complaint that "non-Black or White colleagues and comparators of different colors and genders experienced different and more preferable treatment as compared to Plaintiff, and they did not suffer any adverse employment actions because of their race, color, sex, or prior protected activities." ECF No. 19-1 at 19 (citing Compl. ¶¶ 63, 73, 82, 110). Plaintiff also contends that specific examples alleged in *Glanville I* and reasserted here as background evidence support her non-precluded claim that BPD's refusal to reinstate her was discriminatory. For example, Plaintiff highlights that she was "singled out because of her protected class status to author an administrative report explaining her whereabouts in connection with" a double homicide that occurred on April 29, 2022, while "similarly situated" "non-African American / non-Black male officers" were not required to write a report or otherwise explain their whereabouts during the incident. *Id.* (citing Compl. ¶¶ 48, 50, 51). Even accepting that allegation as true, Plaintiff fails

to draw any plausible connection between that event and BPD's later decision not to reinstate her following the circuit court proceedings. Plaintiff does not allege, for example, that the officer responsible for requiring her to complete the administrative report in 2022 was also responsible for a decision not to reinstate her employment in 2025. Put differently, the instant Complaint does not allege facts permitting the reasonable inference that the challenged reinstatement decision occurred under circumstances which give rise to an inference of unlawful discrimination. Therefore, the Court finds that the Complaint fails to state any plausible discrimination claim based on BPD's failure or refusal to reinstate Plaintiff's employment—the only discernable discrimination claim not precluded by the judgment in *Glanville I*.

For the foregoing reasons, Defendants' motion to dismiss shall be granted as to the race, color, and sex discrimination claims asserted under Title VII and the MFEPA in Counts I, I, III, and VII.

### 2. Hostile Work Environment

In Count IV of the instant Complaint, Plaintiff asserts a discriminatory hostile work environment claim under Title VII. Plaintiff asserts a corresponding claim for discriminatory workplace harassment under the MFEPA in Count VII.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Generally, to state a claim, a plaintiff must allege that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work

environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011).

The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. A court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (cleaned up).

BPD terminated Plaintiff on September 10, 2024. Compl. ¶¶ 101–02. More than eight months later, on May 20, 2025, the Circuit Court for Baltimore City ordered BPD to reinstate Plaintiff, but BPD failed or refused to do so. *Id.* ¶¶ 103–05. When BPD declined to reinstate Plaintiff, she had already been separated from the workplace for more than eight months. Although BPD's decision not to reinstate Plaintiff in or after May 2025 was plausibly "unwelcome," it is not plausible that any such decision could have "to alter[ed] [Plaintiff's] conditions of employment" or contributed to "an abusive work environment[.]" *Okoli*, 648 F.3d at 220. Plaintiff was not employed by BPD at the time the decision was made and had not been in BPD's employ or any work environment controlled by BPD for more than eight months when BPD declined to reinstate

her. In short, the alleged failure or refusal to reinstate was not conduct directed at Plaintiff in the workplace.

Courts have recognized that conduct occurring after an employee has left the workplace generally cannot constitute part of a hostile work environment. *See Mance v. Owings Mills Autos, LLC,* Civ. No. JKB-17-2222, 2018 WL 1872529, at *6 (D. Md. Apr. 19, 2018) ("It is hard to imagine a hostile *work* environment, replete with 'severe and pervasive' unwelcome conduct, when a plaintiff did not work in the environment.") (emphasis in original); *Pueschel v. Peters,* 577 F.3d 558, 565–66 (4th Cir. 2009) (holding conduct that occurred while plaintiff was on leave without pay could not contribute to a hostile work environment because it occurred after she left the workplace). Plaintiff's failure-to-reinstate allegation therefore cannot, standing alone, constitute the unwelcome workplace harassment necessary to support either a discriminatory or retaliatory hostile work environment claim.

Furthermore, BPD's failure or refusal to reinstate Plaintiff cannot resurrect the hostile work environment count the Court previously found to be futile in *Glanville I*. It is not plausible that BPD's decision not to reinstate was part of any continuing violation, as Plaintiff contends. *See* ECF No. 19-1 at 22 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). The continuing-violation doctrine is not a means to revive allegations that the Court has already determined are precluded by *Glanville I*. *See Living Lands, LLC v. Ward*, Civ. No. 3:24-0356, 2025 WL 819104, at *4 (S.D.W. Va. Mar. 13, 2025) (observing that "a party alleging continuing violations does not always prevent the application of a res judicata bar."), *aff'd*, No. 25-1386, 2026 WL 711205 (4th Cir. Mar. 13, 2026). Nor does it necessarily convert a discrete employment decision into part of a continuing hostile work environment. *See Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 613 (W.D. Va. 2019) ("[T]he continuing violation doctrine does not

apply to 'discrete acts such as termination or failure to promote . . . that are easy to identify.'" (quoting *Morgan*, 536 U.S. at 115)) (cleaned up). Here, the Court has already determined that the bulk of Plaintiff's hostile work environment allegations are precluded by the judgment in *Glanville I*. Plaintiff cannot circumvent that determination by characterizing BPD's subsequent decision not to reinstate her as a new component of the same hostile environment. By the time BPD decided not to reinstate Plaintiff, she had already been separated from the workplace for more than eight months. The failure to reinstate therefore did not render more "severe or pervasive" any workplace harassment she suffered before her termination more than eight months prior. *Okoli*, 648 F.3d at 220. Rather, the failure or refusal to reinstate Plaintiff was a discrete employment decision occurring well after Plaintiff had left the workplace. Accordingly, Plaintiff's claim that BPD's failure to reinstate her "exacerbated" her prior hostile work environment, Compl. ¶ 168, is not plausible.

Count IV shall be dismissed for failure to state a claim for discriminatory hostile work environment under Title VII.[5] Plaintiff's workplace harassment claim under the MFEPA in Count VII shall be dismissed for the same reasons.

---

[5] Plaintiff argues in her opposition that the facts alleged in the instant Complaint support a plausible inference "that the hostility she experienced was motivated, at least in part, by discriminatory and retaliatory animus . . . ." ECF No. 19-1 at 22. To the extent Plaintiff tries to assert a claim for *retaliatory* hostile work environment in Count IV distinct from her retaliation claim in Count V, that retaliatory hostile work environment claim fails for insufficient pleading. To state a plausible claim for retaliatory hostile work environment under Title VII, a plaintiff "must . . . allege that the retaliatory conduct (1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022) (citation omitted). Count IV includes formulaic and conclusory allegations that Plaintiff endured "severe and pervasive" conduct "based on . . . retaliation" that "discouraged participation in protected activity in Plaintiff's position." Compl. ¶¶ 165–66. BPD's decision not to reinstate Plaintiff could not plausibly be severe or pervasive standing alone, and, as explained *supra*, that decision bears no connection to any workplace harassment Plaintiff suffered in the workplace more than eight months prior. Again, Plaintiff was not employed by BPD and had not been in its work environment for more than eight months when the decision not to reinstate was made.

**3. Retaliation**

In Count V of the instant Complaint, Plaintiff asserts a claim for retaliation under Title VII. Plaintiff also alleges unlawful retaliation under the MFEPA in Count VII.

Title VII forbids employers from "retaliat[ing] against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII[,]" *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (citing 42 U.S.C. § 2000e–3), or "participating in an ongoing investigation or proceeding under Title VII," *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e–3). Protected participation includes "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citing 42 U.S.C. § 2000e–3). Similarly, "MFEPA prohibits an employer from . . . retaliating 'against any of its employees" because that individual has either 'opposed any practice prohibited by [the MFEPA]' or 'made a charge testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the MFEPA].'" *Hanke v. United Parcel Serv., Inc.*, Civ. No. JRR-23-2130, 2024 WL 3554973, at *4 (D. Md. July 26, 2024) (citing Md. Code Ann., State Gov't § 20-606(f)). To state a *prima facie* claim of retaliation, a plaintiff must establish "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman*, 54 F. 4th at 212 (citation omitted); *see also Cato v. Mission Rock Residential, LLC*, Civ. No. ELH-25-3703, 2026 WL 1745726, at *18 (D. Md. June 17, 2026) (observing that retaliation claims brought under MFEPA are analyzed under the standards as those same claims brought under Title VII and collecting citations).

A plaintiff alleging retaliation may show causation (1) by presenting facts that suggest "the adverse action occurred because of the protected activity"; or (2) by demonstrating that "the

adverse act bears sufficient temporal proximity to the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 115, 123 (4th Cir. 2021) (citation omitted). "Temporal proximity between an employer's knowledge of protected activity and an adverse employment action" may establish causation only if it is "very close." *Laurent-Workman*, 54 F.4th at 209 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (cleaned up).

In this case, BPD does not contest that its failure to reinstate Plaintiff is an adverse action for purposes of a retaliation claim—nor could it. *See, e.g.*, *Johnson v. Metro. Wash. Airports Auth.*, Civ. No. 05-281, 2006 WL 177394, at *2 (E.D. Va. Jan. 24, 2006), *aff'd*, 214 F. App'x 274 (4th Cir. 2007) ("The alleged adverse action occurred when [d]efendant did not reinstate [plaintiff] . . . ."). Nor is there any dispute that Plaintiff engaged in protected activity by filing EEOC charges. *See Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 449 (D. Md. 2022) ("It is undisputed that filing a charge of discrimination with the EEOC is protected activity within the meaning of Title VII."). Instead, given the timing of BPD's decision not to reinstate Plaintiff, the dispute here concerns which protected activity is relevant and whether a causal link exists between that activity and BPD's decision.

Recall that the Circuit Court for Baltimore City ordered BPD to "immediately" reinstate Plaintiff on May 20, 2025. Compl. ¶ 104. Plaintiff argues that the EEOC complaint filed one day prior—on May 19, 2025 (Charge No. 531-2025-02973), *see id.* ¶ 18—is protected activity supporting her retaliation claim. ECF No. 19-1 at 24. In BPD's view, however, Plaintiff cannot rely on the May 19, 2025, EEOC charge because "every allegation in her complaint predates that charge," and the Complaint "lacks any factual foundation to assert that the relevant decisionmaker was aware of her alleged protected activity[.]" ECF No. 20 at 11.

Neither of BPD's arguments warrant dismissal at this stage. First, the Complaint in this case identifies BPD's subsequent decision not to comply with the court order and reinstate her as a discrete adverse action. *See* Compl. ¶ 174. That decision is alleged to have occurred *after* Plaintiff filed her EEOC charge of May 19, 2025. BPD therefore cannot defeat the retaliation claim simply by pointing to allegations concerning earlier adverse actions; Plaintiff is challenging a later decision not to reinstate her—made after the circuit court's ruling on May 20.

Second, Plaintiff has plausibly alleged that BPD was aware of her protected activity. She alleges that "Defendants, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity" before taking the alleged adverse actions, including declining to reinstate her, because they were "informed by Plaintiff directly" and "advised by an EEO representative." *See id.* ¶ 177. Although these allegations are sparse, when considered in the context of then-ongoing litigation and administrative proceedings between Plaintiff and BPD, they are sufficient at the pleading stage to permit a reasonable inference that, when the decision was made not to comply with the circuit court's order, it was made with knowledge of Plaintiff's EEOC charge of May 19, 2025. Plaintiff's allegations distinguish this case from those in which the complaint contained *no* facts suggesting that the decisionmaker was aware of the plaintiff's protected activity. *See, e.g.*, *Ragin v. Hegseth*, Civ. No. MJM-24-3365, 2026 WL 860525, at *12 (D. Md. Mar. 30, 2026) (noting that the amended complaint "does not contain any facts to support a reasonable inference that the decisionmaker behind the termination notice was aware of Plaintiff's complaints"); *Marshall v. Marshall's TJX Cos., Inc.*, Civ. No. WMN-15-555, 2015 WL 7754367, at *3 (D. Md. Dec. 2, 2015) (dismissing retaliation claim in part because there was "no information in the Complaint" suggesting that the decisionmaker was aware of Plaintiff's prior complaints of discrimination); *Kennedy v. McHugh*, Civ. No. CCB-13-390, 2013 WL 4541404, at *2 (D. Md.

Aug. 23, 2013), *aff'd sub nom. Kennedy v. Dep't of the Army*, 554 F. App'x 248 (4th Cir. 2014) (dismissing retaliation claim for plaintiff's failure to show causal connection or employer's knowledge of his protected activity).

Finally, the timing alleged in the Complaint supports an inference of causal relation between Plaintiff's protected activity and BPD's alleged decision not to reinstate her after the circuit court's order. Plaintiff filed her EEOC charge on May 19, 2025, the circuit court ordered BPD to reinstate her the next day, and, thereafter, BPD allegedly refused to reinstate her. Unlike cases involving a substantial temporal gap between protected activity and adverse action, Plaintiff alleges that her protected activity and BPD's adverse action occurred in almost immediate succession. At this stage, the Court must draw all reasonable inferences in Plaintiff's favor. Doing so, and accepting Plaintiff's allegations as true, Plaintiff has alleged a plausible causal connection between her protected activity and BPD's subsequent refusal to reinstate her. Whether Plaintiff can ultimately prove that BPD's failure to reinstate her was retaliatory is a question for a later stage of the proceedings.

Accordingly, the Court declines to dismiss Plaintiff's Title VII and MFEPA retaliation claims in Counts V and VII insofar as they assert claims against BPD for unlawful retaliation based on the failure to reinstate her employment after the circuit court's order.

**4. Sections 1981 and 1983**

Plaintiff asserts claims against Defendants under 42 U.S.C. §§ 1981 and 1983 for violating her constitutional rights to freedom of speech and expression and discriminating against her based on race, color, and sex. *See* Compl. ¶¶ 191, 207, 215. These claims fail.

First, Plaintiff has abandoned her arguments with respect to the First Amendment. Defendants argue in their motion to dismiss that Plaintiff fails to allege any First Amendment

violation. *See* ECF No. 13-1 at 28. Plaintiff did not respond to that argument in her opposition. Therefore, Plaintiff is deemed to have abandoned that argument. *See Fanucchi v. Enviva Inc.*, Civ. No. DKC 22-2844, 2024 WL 3302564, at *8 (D. Md. July 3, 2024) ("Plaintiff does not respond to [Defendant's] argument in his opposition and has therefore conceded the point.") (collecting citations); *Anderson v. Thomas*, Civ. No. BAH-21-0683, 2024 WL 4393175, at *4 (D. Md. Oct. 2, 2024) (noting that Plaintiff abandoned his alleged excessive force claim by only addressing deliberate indifference in the opposition to Defendant's motion to dismiss without any mention of an excessive force).

Plaintiff's §§ 1981 and 1983 race discrimination and retaliation claims also fail. Section 1983 provides a cause of action against a person who, acting under color of state law, subjects a person within the jurisdiction of the United States to the deprivation of federal rights. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines*, 2023 WL 2185779, at *23 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law[,]" 42 U.S.C. § 1981(c), including by race discrimination and retaliation for opposing race discrimination in employment, *see Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442,

446 (2008)). The elements required to establish race discrimination and retaliation are the same under Title VII and 42 U.S.C. §§ 1981 and 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("elements required to establish [race discrimination] are the same under [Title VII and §§ 1981 and 1983]"); *Boyer-Liberto*, 786 F.3d at 277 ("same test applies to" hostile work environment claims under Title VII and § 1981); *Guessous*, 828 F.3d at 217 ("elements of [Title VII and § 1981] retaliation claims are identical").

Again, the only discernable discrimination claim not precluded by the judgment in *Glanville I* is based on BPD's refusal to reinstate Plaintiff's employment. The Court has previously concluded that Plaintiff fails to state any plausible discrimination claim on that basis under either Title VII or the MFEPA. *See* Part III.B.1 *supra*. Because Plaintiff has not adequately pleaded a claim for discrimination under Title VII, her § 1983 discrimination claim fails for the same reasons. *See Sawicki v. Morgan State Univ.*, Civ. No. WMN-03-1600, 2005 WL 5351448, at *14 (D. Md. Aug. 2, 2005), *aff'd*, 170 F. App'x 271 (4th Cir. 2006) (explaining that courts may apply the standards developed in Title VII litigation to similar litigation under § 1983 and dismiss on the same basis). Although Plaintiff has stated plausible Title VII and MFEPA retaliation claims against BPD's decision not to reinstate her, *see* Part III.B.3 *supra*, she cannot proceed with any § 1983 claim based on a violation of § 1981 without identifying a government official responsible for the alleged retaliation and asserting her claim against that official in his personal capacity. *See Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'") (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733 (1989)); *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (holding that, to state a § 1983 claim, plaintiff must "plead that *each* Government-

official defendant, through the official's *own individual actions*, has violated [federal rights]") (quoting *Iqbal*, 556 U.S. at 676).

To the extent Plaintiff is proceeding under a different theory, her § 1983 claim still fails. Section 1983 imposes liability on any "*person*" who, under the color of state law, causes the deprivation of federal rights. 41 U.S.C. § 1983 (emphasis added). A *municipality* may be liable under § 1983 for a deprivation of federal rights "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[In § 1983], Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Green v. Obsu*, Civ. No. ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citations omitted). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulations; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests" deliberate indifference to the rights of citizens; [or] (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20- 3431, 2021 WL 3510579, at *6 (D. Md. Aug. 10, 2021) (citing *Lytle*, 326 F.3d at 471).[6]

Plaintiff devotes most of her opposition to arguing that Commissioner Worley was a person with final policymaking authority and that his decision to terminate Plaintiff was part of a persistent and widespread practice of discrimination against her. *See* ECF No. 19-1 at 29–31. Plaintiff's argument misses the mark. To begin, Plaintiff's claims arising from her termination and the conduct leading to it are precluded by *Glanville I*. The only discrimination theory that remains in this action is based on BPD's refusal to reinstate Plaintiff after the Circuit Court for Baltimore City ordered her reinstatement. To sustain a *Monell* claim based on BPD's alleged refusal to reinstate her, Plaintiff must allege that this refusal was caused by an unconstitutional municipal policy or custom. She has not done so. Nor does Plaintiff identify any BPD policy directing officials to refuse court orders to reinstate employees based on race, color, sex, or exercise of any federal rights. Plaintiff does identify any other employee who was denied reinstatement under comparable circumstances, much less allege a persistent and widespread practice of discriminatory refusals to comply with judicial reinstatement orders. *See Lytle*, 326 F.3d at 471.

Plaintiff's failure-to-train theory fares no better. Plaintiff asserts that BPD "failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities." ECF No. 19-1 at 32. "To state a claim under Section 1983 based on a failure to train, a plaintiff must allege (1) the nature of the training, (2) that the training was a deliberate and conscious choice by the municipality, and (3) that the officer's conduct resulted from said training." *Hernandez v. Lloyd*, Civ. No. JRR-23-01016, 2024 WL

---

[6] Because "the analysis is substantively similar under §§ 1981 and 1983, the Court will address them together." *Gordon v. Maryland State Police*, Civ. No. GLR-22-1699, 2023 WL 6161089, at *9 (D. Md. Sept. 21, 2023), *aff'd sub nom. Gordon v. Heath*, 179 F.4th 263 (4th Cir. 2026).

1329297, at *12 (D. Md. Mar. 28, 2024) (citations omitted). Plaintiff identifies none of these elements.

In sum, Plaintiff fails to state any plausible claim §§ 1981 and 1983 in Count VI of her Complaint. This count shall be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss shall be granted in part and denied in part. The motion shall be denied as to Counts V and VII insofar as these counts assert claims against BPD[7] for unlawful retaliation based on the failure to reinstate Plaintiff after her termination. All remaining claims shall be dismissed without prejudice.

A separate Order will issue.

August 21, 2026
Date

/S/
Matthew J. Maddox
United States District Judge

[7] Defendants argue that Plaintiff "does not allege any conduct on the part of the City" and, therefore, the Mayor and City Council of Baltimore City should be dismissed from this action. ECF No. 13-1 at 10 n.5. Plaintiff does not respond to Defendants' argument, "effectively conceding the point. *Carter v. Baltimore City Police Dep't*, Civ. No. JRR-24-03057, 2025 WL 2208132, at *12 (D. Md. Aug. 4, 2025) (collecting citations). In any event, Plaintiff's allegations do not allege that Mayor and City Council of Baltimore were responsible for BPD's failure to reinstate Plaintiff. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (concluding that the "repeated general references to 'Defendants'" were not sufficient to state a plausible claim). Therefore, the Mayor and City Council of Baltimore City will be dismissed from this action.